## JOHN B. KUNKEL and PHILIP KUNKEL *vs.* JOHN H. SPOONER.

Where the record states that a plea of limitations was stricken out because it *appeared* to the court that it was *not filed* "on or before the day designated and fixed *by the rules of court* here, for the filing" of such pleas, the appellate court must, *in the absence of the rules of court in the record, and of all proof to the contrary,* assume *the verity* of this statement.

The plea of limitations is not a plea to the merits, and the universal practice has been never to permit it to be amended, and to demand that it should be filed by the rule day.

Possession of a negotiable promissory note, endorsed in blank, is *prima facie* evidence of ownership, and will enable the holder to sue on it in his own name, unless *mala fides* be proved.

As a general rule, possession of such a note, by the attorney of a party, is possession by the party himself.

Where a note endorsed in blank is protested *at the request of a bank*, whose name was never on the note, and suit is subsequently brought in the name of a holder, the *protest* is no more evidence that the ownership, at the time of protest, was in the bank, than that the bank was merely the collecting agent for the real owner.

Nor does such protest necessarily show, that the holder after protest was not the holder and owner who placed it in bank for collection, and cannot therefore, *per se*, defeat the *prima facie* right of action based on possession.

APPEAL from the Circuit Court for Frederick County.

*Assumpsit* by the appellee against the appellants, upon a promissory note, dated "Philadelphia, October 18th, 1847," for $437.28, made by John B. Kunkel & Co., payable to E. Levick & Co., or order, at six months, and endorsed by the payees and also by Corner, Willow and Gardner, and J. & J. P. Steiner. The declaration was filed and the summons issued on the 12th of May 1854, returnable on the 3rd Monday of October following, when it was returned summoned, and the defendants appeared by attorney, and were ruled, as the record states, to answer the declaration, or judgment by default will be entered against them. The case was then continued to the second Monday of February following, when the defendants pleaded *non assumpsit*, and the two pleas of limitations, *non assumpsit infra tres annos* and *actio non accrevit infra tres annos*. These two latter pleas were stricken out, as stated in the opinion of this court, and the case was tried upon issue joined upon the plea of *non assumpsit*.

*Exception.* The plaintiff offered in evidence the note and protest, the latter showing that it was protested at the request of the Bank of Penn Township, in the county of Philadelphia. It was admitted that the appellants were partners, and that one of them signed the note in the firm name. The endorsement of the payees was also proved. The declaration in the name of the appellee, as plaintiff, was filed by his attorney, and contains the endorsement stated in the opinion of this court. The defendants offered no evidence, but submitted the prayer which is set out in full in the opinion of this court.

This prayer the court below, (NELSON, J.,) refused to grant; to which ruling the defendants excepted, and the verdict and judgment being against them, appealed.

The cause was argued before LE GRAND, C. J., ECCLE-STON and MASON, J.

*Joseph M. Palmer* for the appellants, argued:

1st. That it was error to strike out the pleas of limitations upon a mere parol motion, without any reasons assigned for the court's action; for if there are any *rules* of court regulating the time and manner of filing such pleas, they ought to have appeared as the basis of the motion, and as part of the record of proceedings in the case. It has been the uniform practice of the courts of this State, that whenever a question arises as to the construction of the rules of court, such rules should be made part of the case by a rule to show cause, or otherwise, as the basis of the court's action; for in the absence of such rules, as a part of the record, how can this court conjecture upon what principles the court below acted in ordering these pleas to be stricken out? How can they construe the rules unless they appear in the record? This court cannot take judicial notice of the rules of practice of any circuit court, any more than they could of a private act of Assembly. The plaintiff took upon himself the affirmative of the question, and it was his duty to show clearly, that the defendants were not entitled to the defence set up by these pleas, by reason of some negligence on their part; and how could that be done, according to the principles of law, without making the rules of court, touching the question, a part of the record? The case of *Benson vs. Davis,* 6 *H. & J.,* 271, is, in principle, precisely like this. In that case the court entered a judgment of *non pros.,* because the plaintiff did not file his declaration by the rule day, and this judgment was *reversed,* the rules of Montgomery county court *not appearing in the record.* In the case of *Wall vs. Wall,* 2 *H. & G.,* 79, it was admitted the rules and practice of the court below *should appear in the record,* both by the court and counsel, but in that case the

rules were admitted in the bills of exceptions, which the court said was sufficient. Ever since the decision of these cases it has been admitted, as settled law in this State, that the rules of practice of county courts, in cases like this, should appear in the record, and the profession have practiced accordingly. 1 *Gill*, 218, *Nelson vs. Bond.* 2 *Gill*, 345, *Gist vs. Drakely.* 9 *Gill*, 264, *Newcomer vs. Keedy.* 11 *G. & J.*, 92, *Dunbar vs. Conoway.* 6 *Md. Rep.*, 511, *Ellicott vs. Martin.* It is a well settled principle of law, that no party shall be deprived of his pleas, unless the neglect to plead in time is his own default, and whenever this case is properly presented it will be insisted, that the defendants have not been guilty of any neglect or default. The plea of limitations may be denounced as unrighteous and dishonest, but this is not the language of the law. The law authorises the plea as a protection against stale demands, and the party using it is only exercising a legal right, and no one has the right to appeal to the moral sense of a legal tribunal prejudicially to such a plea. If the plaintiff was not entitled to have these pleas stricken out, the judgment must be reversed. We could not appeal until *after final judgment*, when the *whole record* comes up with all its *infirmities*.

2nd. The only other questions in the case arise under the defendants' prayer. The plaintiff must prove a legal right to the promissory note sued on, either by endorsement or delivery, to entitle him to recover in his own name. There must be a privity of contract and a legal interest in the note, proved to be in the plaintiff at the time of instituting the action. This note was payable to the order of E. Levick & Co., indorsed in blank by the payees and *others*, and discounted by the Bank of Penn Township. At maturity it was owned by and in the possession of this bank, and was protested for non-payment as *its property*. The note and the protest were filed in the case as the cause of action. The plaintiff, by his own evidence, proves himself out of court, for the protest is *prima facie* evidence that the legal interest in the note was *in the bank* at the time of bringing this action, the protest being, *per se*, evidence of its contents. *Act of* 1837, *ch.* 253. 4 *Gill*,

59    v.9

201, *Barry vs. Crowley.* There is not a particle of evidence that Spooner, the plaintiff of record, ever saw the note, or had any legal right to institute a suit thereon in his own name, nor from whom the attorney received the note and protest. The *prima facie* evidence, that the note belongs to the bank, must be repelled to enable the plaintiff to sustain his action; he must show by some kind of evidence, that he has an interest in the note, and this he has not done. The legal principles governing the case are few and simple. A negotiable note endorsed in blank, by the payee, may pass from hand to hand by delivery, and the holder may fill up the blank and sue in his own name, and bring suit after the blank is so filled up. But until the blank is filled up, the holder has no legal right to sustain an action in his own name. Independent of the act of 1825, ch. 35; if the plaintiff should obtain a judgment without filling up the blank, the judgment would be reversed. 5 *H. & J.*, 115, *Hudson vs. Goodwin.* 3 *Do.*, 172, *Ringgold vs. Tyson.* 6 *Do.*, 140, *Day vs. Lyon. Ibid.*, 282, *Kiersted vs. Rogers.* The object and intention of the act of 1825, was to provide against such reversals. When the blank is filled up to any particular holder it is evidence that he has the right of action, but if not so filled up the plaintiff must resort to other evidence to prove his right. It is admitted, that actual possession of a note or bill by a party, or his authorised agent, is *prima facie* evidence of ownership, and would authorise him to sue in his own name by striking out all previous endorsements up to the first, but in this case the plaintiff has offered no evidence to sustain his action. It may perhaps be contended, that the *institution of the suit*, in the name of Spooner, is *prima facie* evidence of the ownership, but it is believed such a startling proposition cannot be sustained without some other evidence to prove a right to the note. The counsel who brought the suit was a competent witness to prove from whom he received the note, and his instructions in relation to its collection: a letter from Spooner, inclosing the note for collection, in the possession of counsel, would be evidence. Yet not the least particle of evidence has been offered to rebut the *prima facie* evidence, that it belongs to the Bank of Penn Township. These views of the

character of the evidence seem to be fully sustained by the Court of Appeals, 1 *G. & J.*, 175, *Bowie vs. Duvall.* 1 *Gill,* 130, *Whiteford vs. Burckmyer & Adams,* and the same case in 6 *Gill,* 1, where the the principal question involved was, whether the plaintiffs had such an interest in the bill as entitled them to recover on it in their own names. This case does not fall within the principle which governed the cases in 3 *Wheat,* 172, *Dugan vs. The United States.* 11 *Pick.,* 318, *Ellsworth vs. Brewer.* 7 *Cranch.,* 159, *Welch vs. Lindo.* 6 *Cowen,* 449, *Norris vs. Badger.* *Chitty on Bills,* 456, 457. In these cases the parties in possession of the notes or bills were endorsers upon them, and after maturity took them up, being liable because their names were on the paper. In this case Spooner's name never was on the note, and it no where appears that he had any right to it.

*Bradley T. Johnson,* for the appellee argued:

1st. That as there is no appeal from the order of court below striking out the pleas of limitations, no question upon that point can be raised in this court, since the act of 1825, ch. 117. 5 *Md. Rep.,* 540, *Tyson vs. Shueey.* If the appellant desired to raise this question he should have excepted to the ruling of the court in this particular, and have set out the *rules of court* in the *exception.* The case of *Benson vs. Davis,* 6 *H. & J.,* 272, was brought up on an appeal from the judgment of *non pros.,* which was rendered upon the *ruling* of the court below, that the declaration was not filed in time, and was prior to the passage of the act of 1825. All the other cases cited on the other side, or which can be found in the Reports, are either upon a statement of facts, or upon *bills of exceptions.* An *exception* is therefore necessary before this point can be raised. But suppose the question is legitimately before this court in its present form, we still insist there is no error in the ruling complained of. The record shows that the court struck out the pleas, *because* it *appeared* they had not been filed "on or before the day designated and fixed *by the rules of the court* here, for filing pleas of the statute of limitations." In the *absence of all proof to the contrary,* this court

must *assume* the verity of this statement of the judge below, certified by the record. 6 *H. & J.*, 407, *Rigden vs. Martin.* 9 *G. & J.*, 51, *Fitzhugh vs. McPherson.* 8 *G. & J.*, 148, *Calwell vs. Boyer.*

2nd. That the fact that the plaintiff was in possession of the note, which was endorsed in *blank*, is *prima facie* evidence that he was the owner of it, and entitled to sue thereon in his own name. The case of *Whiteford vs. Burckmyer & Adams,* 1 *Gill*, 147, is full, direct, and conclusive on this point. The act of 1835, ch. 25, say the court in that case, gives to the plaintiff *all the advantage* from a blank endorsement which he could derive *from an endorsement in full,* so far as his right of action is concerned. If this note had been endorsed by the payees, "pay to John H. Spooner or order," there could be no shadow of doubt as to Spooner's right to maintain this action, and under the blank endorsement he has the *same right,* according to the decision of the case referred to. See also *Md. Rep.*, 516, *Ellicott vs. Martin. Ibid.*, 319, *McDowell vs. Goldsmith.* Possession is *prima facie* evidence of ownership, and will entitle the holder to sue in his own name, unless *mala fides* be alleged and proved, and there is no such allegation or proof in this case. That the plaintiff was in possession of this note is evidenced by the fact, that his attorney had the note in his possession, and commenced the suit in his name, and the possession of the note by the attorney is possession by the client.

ECCLESTON, J., delivered the opinion of this court.

This is an action of *assumpsit*, instituted by the appellee against the appellants. The first count in the *nar* is upon a promissory note, and the second is *insimul computasset.*

The defendants put in three pleas: the first, *non assumpsit;* the second and third, limitations.

It appears from the record that the day on which the second and third pleas were filed, the plaintiff's attorney moved the court to strike them out, which motion was resisted by the attorney for the defendants. The record then states: "Whereupon, all and singular the premises, being seen and heard, and

by the court fully understood, and it appearing to the court here that the said plea of the said defendants, by them above pleaded, was not filed in the said cause on or before the day designated and fixed by the rules of the court here for filing pleas of the statute of limitations, &c. It is therefore considered by the court here, that the second and third pleas of the said defendants, by them above pleaded, be stricken out," &c. And then issue was taken upon the plea of *non assumpsit*, upon which the case was subsequently tried. During the trial the counsel of the defendants asked the court for an instruction to the jury, which was refused, and that refusal was excepted to. The verdict and judgment being in favor of the plaintiff, the defendants appealed.

The first question presented by the argument is, whether the court erred in striking out the second and third pleas.

It is insisted by the appellants, that the *onus* of showing the decision of the motion to strike out is correct, rests upon the appellee; that it was his duty to have the rules of court, bearing on the subject, set forth in the record, and that not being done, there is nothing from which it can legitimately appear the pleas were not filed in due time; the mere statement of that fact in the judgment or order not being sufficient for such a purpose, consequently the appellate tribunal must say there was error in sustaining the motion below. This theory, however, is inconsistent with several adjudged cases relating to the action of the courts in reference to their rules.

In *Rigden vs. Martin*, 6 *H. & J.*, 407, it is said: "There is nothing in the objection, that the decree was passed without setting the cause down for hearing. The court state the cause then stood *ready* for hearing, and we will presume all prerequisites were complied with."

Various grounds were taken for reversing a decree, in *Fitzhugh and others, vs. McPherson*, 9 *G. & J.*, 51, one of them being that a certain order had not been properly served. But on page 71, in delivering the opinion of the court, Judge Dorsey says: "In the absence of all direct proof to the contrary, we regard the statement of the chancellor, in his order of the 1st of April 1834, 'that the above mentioned order had

been duly served,' sufficient evidence of the truth thereof.''
And reference is made to *Rigden vs. Martin.*

We find it said, by the same able judge, speaking for the
court, in *Calwell vs. Boyer,* 8 *G. & J.,* 148: "The *third*
ground relied on by the appellants is, because the order to
take the bill *pro confesso,* and to issue *an ex parte* commission,
passed before the rule to answer expired. We do not feel our-
selves at liberty to say that there has been any irregularity in
the passage of this order. Neither the rules of *Harford* county
court upon this subject, nor the time of holding its intermediate
terms, prescribed by law, appearing before us; and the court
certifying that the time to answer had elapsed, we will, in the
absence of all proof to the contrary, assume the verity of their
statement, and presume that the order *pro confesso* was legiti-
mately passed. There is nothing in the record to show that
the rule to answer extended to the August term. It may by
the rules of the court have been limited to some intermediate
day, or to the intervening equity term of the county court.''

The case of *Benson vs. Davis' Adm'r,* 6 *H. & J.,* 272, has
been referred to in support of the appellants' view, that because
the rule of court is not in the record, so as to show the correct-
ness of the decision based upon it, the judgment must be
reversed, notwithstanding the statement by the court of the
ground on which the pleas were stricken out. In the case
referred to, the plaintiff was under a rule to file his *nar* on the
first Monday of March term 1821. The formal parts of the
original and amended records, (both of which we have exam-
ined,) state, that on the first Monday of March 1821, Benson
filed his declaration; and after setting out the *nar,* a rule on
Davis to plead is stated, as if laid on the same day. The cause
is then said to have been continued until the second Monday
of November following. And immediately after stating the
appearance of the parties on that day, the amended record
proceeds thus: "Thereupon it appears to the court here, that
the declaration aforesaid, of the said John Benson in the plea
aforesaid, was not filed in court here in the said plea on or
before the first Monday in March, in the year of our Lord,
one thousand, eight hundred and twenty-one, but that the

said declaration was filed in the plea aforesaid on the eighteenth day of May of the same year; and because the said declaration was not filed in the plea aforesaid, on or before the said first Monday of March, eighteen hundred and twenty-one, it is therefore considered by the court here, that the said John Benson take nothing by his declaration aforesaid," &c.

This judgment of *non pros.* was reversed by the Court of Appeals, as their opinion clearly shows, upon the principle, that although a plaintiff fails to file his *nar* by the rule day, but it is filed afterwards, and received, and the defendant is laid under a rule to plead, he has no right, *then,* to take advantage of the laches of the plaintiff. The plaintiff was under a rule to plead by the first Monday in March 1821; on which day the March term commenced, and the court say, "must have been continued or adjourned to the following May, for we find the declaration was filed on the 18th of May, and a rule laid on the defendant to plead, *as of March term.*" The case was continued *under the rule to plead* to November term, when the judgment of *non pros.* was entered, because the *nar* had not been filed by the first Monday in March.

Under such circumstances the Court of Appeals might well say: "If there are any rules of practice in Montgomery county court that justify the procedure in this case, they ought to have appeared in the record.

"In their absence, we cannot conceive upon what principle the judgment of *non pros.* was entered."

From this, however, it is by no means a correct inference, that if the judgment had simply stated it was rendered, because the *nar* had not been filed by the rule day, there being no proof to the contrary, and nothing to show that although filed after the rule day it had been received, and the defendant laid under a rule to plead, that the judgment would have been reversed, because the rules were not set out in the record.

When the court used the language we have quoted, in regard to the absence of any rules, to justify such a procedure, we understand them as meaning to express strong disapprobation of a *non pros.* in such a case. And therefore, not being able to conceive upon what principle it was rendered, if there

were any rules so directly opposed to their views of correct practice as to justify such a procedure, they ought to have appeared in the record. But surely they could not have been unable to conceive upon what principle a judgment of *non pros.* had been entered, if in that judgment the court had merely said it was because the *nar* had not been filed by the rule day, and there was nothing to show the statement to be incorrect, or to show any error in the judgment.

And we certainly have no difficulty in conceiving, in the absence of the rules in the present record, upon what principle the second and third pleas were stricken out, when the court have said it was because they were not filed on or before the day designated and fixed by the rules of the court for filing pleas of limitations. In regard to such pleas it is said, in *Wall vs. Wall,* 2 *H. & G.,* 81: "The plea of limitations has been adjudged not to be a plea to the merits, and the universal practice has accordingly been, never to permit it to be amended, and to demand that it should be filed by the rule day."

In that case the rules of court were not made part of the record, and the opinion of the court, as set forth in the exception, was used as evidence, in connection with other parts of the bill of exceptions, to show that the plea was required to be filed at length, and by the rule day.

In *Brice vs. Randall,* 7 *G. & J.,* 349, bills of exceptions were taken, but they contained no evidence whatever;—the prayers only were set forth in them.

In delivering the opinion of the court, Judge Archer says, "Anterior to the act of Assembly of 1825, ch. 117, the court would have entertained the appeal, and would have determined the law of the prayers, upon the assumption, that there was evidence upon which the prayers might be bottomed.

"The act of 1825, ch. 117, requires this court to review the points decided below, and if in the case in 2 *Har. & John.,* 376, the court were bound to consider, that evidence was offered below, which would have justified the action of the court, such a rule would and must lead us to the same conclusion here; and on the supposition, that there was evidence before the court and jury, the question presented is sufficiently pointed and specific to call for the judgment of this court."

The decisions in the cases which have been noticed, do not, in our opinion, justify a reversal of this judgment upon the ground that there was error in striking out the pleas of limitations.

The note sued upon was drawn by the defendants in favor of "E. Levick & Co.," or order. It was endorsed in blank by "Eben'r Levick & Co.," and upon it are also the names of "Corner, Willow & Gardner," and "G. & J. P. Steiner." It became due 18th–21st of April 1848, and on the 21st of April was protested at the request of the Bank of Penn Township in the county of Philadelphia. The suit was instituted by Wm. M. Merrick, Esq., as attorney for John H. Spooner, the plaintiff; and the same day on which the summons was ordered and issued, Mr. Merrick, as attorney for the plaintiff, filed a *nar*, the note and the protest, the *nar* having upon it this endorsement: "The clerk will file this *nar*, note and protest, and issue summons for defendants.          WILLIAM M. MERRICK.

*May 12th* 1854."

It is admitted that John B. Kunkel and Philip Kunkel, were partners at the time of the execution of the note, and that John B. Kunkel signed the note by and under the firm name of John B. Kunkel & Co. Evidence was offered to prove the endorsement by Eben'r Levick & Co. The plaintiff also gave in evidence to the jury the note with the protest; and the defendants offered no testimony or evidence of any kind. They, however, prayed the court to instruct the jury, "that from the pleadings and evidence in this case the plaintiff is not entitled to recover;" and assigned eight reasons why he should not.

1st. Because there is not any legal evidence in this case, before the jury, sufficient to entitle the plaintiff to recover the amount of said promissory note against the defendants.

2nd. Because the said John H. Spooner, the plaintiff, has not offered a particle of evidence to the jury to prove that he has or ever had any right or interest in the promissory note in question, against the defendants, so as to enable him to sustain a suit on said promissory note in his own name.

3rd. Because there is no evidence in this case to show that

60     v.9

the said plaintiff was ever in the possession of said promissory note, or that the same belongs to him by delivery or otherwise, or that he ever had any interest in said promissory note.

4th. Because there is not a particle of evidence in the case to prove, that the Bank of Penn Township, in the county of Philadelphia, the holder and owner of said note, on the 21st of April 1848, when it matured, has ever transferred its interest to said promissory note to the said plaintiff either by endorsement or delivery; and because there is no evidence in the case from which the jury can legally infer, that the promissory note in question was ever in the possession of the plaintiff, or that he ever had any right or title thereto by endorsement and delivery, so as to enable the said plaintiff to sustain a suit in his own name.

5th. That in order to entitle the plaintiff to recover in his own name in this case, there must be evidence that he was, at the time of instituting the suit in this case, the holder and owner of the promissory note in question.

6th. Because there is no evidence in the case to prove that the plaintiff ever had the possession of the promissory note in question, or any title or interest thereto, so as to give him a right of action against the defendants.

7th. Because there is a material variance between the allegations in the plaintiff's declaration and the evidence offered by the plaintiff to the jury to sustain said allegations in said declaration, in this, that the promissory note in question varies materially from the one declared upon by the plaintiff.

8th. Because it appears, from the plaintiff's own evidence, that the promissory note in question. belongs to the Bank of Penn Township, in the county of Philadelphia, and that they were the holders of said promissory note at the time this action was instituted.

The instruction asked for was refused, and the defendants excepted.

The 7th reason, which is in relation to a variance between the *allegata* and *probata*, has been abandoned.

It is conceded that Mr. Merrick, as attorney for the plaintiff, ordered the writ in this case, that at the time of doing so he

filed the *nar* as said attorney, and with it the note and protest, which, at the trial, were offered in evidence on the part of the plaintiff.

It is certainly true, as a general rule, that possession by the attorney of a party is possession by the party.

In *Whiteford vs. Burckmyer & Adams*, 1 *Gill*, 145, it is said, "Possession of a note endorsed in blank, will enable the party having it to maintain suit, except *mala fides* be proved. Courts will never enquire whether a plaintiff sues for himself or as trustee for another; nor into the right of possession, unless on an allegation of *mala fides*." And again, on page 146, "A bill payable to bearer, or a bill payable to order and endorsed in blank, will pass by delivery, and bare possession is *prima facie* evidence of title; and for that reason, possession of such a bill will entitle the holder to sue."

On page 147, the court further say, "The act of 1825, ch. 35, provides, that no judgment shall be set aside because of the endorsement being in blank; and in effect gives to a plaintiff all the advantage from a blank endorsement which he could derive from an endorsement in full, so far as his right of action is affected. Any holder, therefore, with a blank endorsement, may now sue in his own name; but the act of 1825 cannot be construed to extend the right of action to one who has no interest in the bill, either as holder or owner."

The principles contained in the first quotation, from the case of *Whiteford vs. Burckmyer & Adams*, have been adopted, in very explicit terms, by this court, in *Ellicott vs. Martin, Love & Co.*, 6 *Md. Rep.*, 516.

Exclusive of the 7th reason, (which has been abandoned,) those which are relied upon in support of the defendant's prayer may be considered as assuming two propositions.

1st. That there is no proof that the plaintiff was the holder of the note at the institution of the suit.

2nd. That the protest of the note in the name of the Penn Township Bank, *per se*, was evidence of such a title to the note, in the bank, that notwithstanding the evidence in regard to the possession of the note by the plaintiff's attorney, when he ordered the writ, the suit could not be maintained in the name of the plaintiff.

To neither of these propositions can we yield our assent. We cannot adopt the first, because there is no evidence of *mala fides,* no proof that any other person than the plaintiff claimed title to this note, either at the institution of the suit or subsequently; and there is, certainly, some evidence tending to prove the possession of the note by the plaintiff's attorney when the suit was commenced.

If a note endorsed in blank, only, is protested at the request of a bank, and suit is subsequently instituted thereon, in the name of a person then having possession of it, the name of the bank at no time having been endorsed upon the note, the protest is no more evidence that the actual ownership of the note, when protested, was in the bank, than that the bank was merely a collecting agent for the real owner; nor does it necessarily show that the party holding the note after the protest was not the holder and owner who placed it in bank for collection: consequently such a protest, *per se,* could not have the effect of defeating a *prima facie* right of action based upon possession. If so, the second proposition above stated, and having relation to the present protest, must be erroneous.

When the circumstances disclosed by the record are considered with reference to the principles announced in the last two cases which have been cited, we cannot entertain the opinion that the court below erred in refusing to grant the prayer of the defendants; and therefore the judgment will be affirmed.

*Judgment affirmed.*