## PUSEY & JONES CO. v. HANSSEN.

(Circuit Court of Appeals, Third Circuit. March 15, 1922.)

No. 2780.

1. **Courts ☞371.(2)—Federal court has jurisdiction to appoint receiver under Delaware statute.**

   Rev. Code Del. 1915, § 3883. providing that "whenever a corporation shall be insolvent, the Chancellor, on the application and for the benefit of any creditor or stockholder thereof, may, at any time, in his discretion, appoint one or more persons to be receivers" of such corporation, confers such jurisdiction on the Court of Chancery, and not on the Chancellor as an individual aside from his court functions, and such power may be exercised by a federal court of equity in the state in a case of which it has jurisdiction.

2. **Bills and notes ☞443(3)—Holder of negotiable note may sue in his own name.**

   A bona fide holder of a negotiable promissory note indorsed in blank, though after maturity, may sue thereon in his own name, whether he owns it or holds it as agent or trustee for another.

3. **Bills and notes ☞351—Indorsee of overdue negotiable paper takes subject only to such equities as attach to the paper itself.**

   An indorsee of negotiable notes though after maturity, takes the paper subject only to such equities or defenses as attach to the notes themselves, and not to claims arising out of collateral matters or independent transactions, whether they arise against the payee or an intermediate holder.

4. **Corporations ☞556—Appointment of receiver under Delaware statute need not be on application of judgment creditor.**

   Under Rev. Code Del. 1915, § 3883, authorizing appointment of a receiver for an insolvent corporation on application of a creditor, it is not necessary that complainant be a judgment creditor.

5. **Receivers ☞8—Appointment held within discretion of court.**

   Appointment of a receiver for a corporation *held* based on valid grounds, and not an abuse of discretion.

Appeal from the District Court of the United States for the District of Delaware; Hugh M. Morris, Judge.

Suit in equity by Hans Karluf Hanssen against the Pusey & Jones Company. From an order appointing receivers for defendant, it appeals. Affirmed.

For opinion below, see 276 Fed. 296.

William A. Glasgow, Jr., of Philadelphia, Pa., Robert Penington and George N. Davis, both of Wilmington, Del., Chester N. Farr, Jr., of Philadelphia, Pa., and Selden Bacon, of New York City, for appellant.

William H. Button, of New York City, and William G. Mahaffy and John P. Nields, both of Wilmington, Del., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. On a bill of complaint filed by Hanssen, a subject of the King of Norway, the District Court entered a decree appointing receivers for the Pusey & Jones Company, a corporate citizen of Delaware. 276 Fed. 296. The respondent took this appeal.

There is little dispute about the facts. For the purpose of this review, they are abridged as follows:

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In 1917, Christoffer Hannevig acquired all the capital stock, both common and preferred, of three corporations of the State of Delaware. They were the Pusey & Jones Company, which had a shipbuilding plant at Wilmington, Delaware; the New Jersey Shipbuilding Company and the Pennsylvania Shipbuilding Company, which had plants at Gloucester, New Jersey. Hannevig was also the owner of nearly all the stock of two other corporations, the Bulk Oil Transports Company and the Manss Steamship Corporation. He was the president, and owner of substantially all the stock, of Christoffer Hannevig, Inc., a corporation engaged in the business of shipbrokerage.

The Transports Company entered into a contract with the Pusey & Jones Company for the construction of five ships at sums agreed upon. The Steamship Corporation entered into contracts with the New Jersey Shipbuilding Company for the construction of four vessels at stipulated sums. In August, 1917, the United States Shipping Board Emergency Fleet Corporation requisitioned construction under these contracts. After this was done, Hannevig, through his corporate control, caused the Transports Company and the Steamship Corporation to sell their contracts for the nine ships to nine Norwegian persons and corporations. At this sale, the nine Norwegian interests paid Hannevig a profit over and above the original price on each contract, and in addition a sum equal to 10 per cent. of the original contract prices, which Hannevig represented had been paid by the Transports Company and the Steamship Corporation to the Pusey & Jones Company and the New Jersey Shipbuilding Company, respectively, at the time the contracts were entered into. This representation was wholly false. Thus Hannevig became indebted to the nine Norwegians in an amount upwards of $1,200,000.

On learning this situation, the Norwegians sent Hans Karluf Hanssen (later the complainant in this action) to the United States with authority, in writing, to collect the moneys owed them by Hannevig and "to take all legal steps which he may deem necessary in order to secure [their] said claims."

After his arrival, Hanssen obtained from Hannevig approximately $565,000, leaving due something over $700,000. To secure this balance Hannevig, on February 13, 1920, gave Hanssen, subject to redemption upon payment of his indebtedness to his Norwegian creditors, three certificates for seventy-two hundred shares of the preferred stock of the Pusey & Jones Company. The first two certificates (for seven thousand shares) were in the name of Christoffer Hannevig, Inc., the accompanying power of attorney being signed by the corporation for transfer to Hannevig, followed by Hannevig's endorsement in blank. The third certificate (for two hundred shares) was in the name of Hannevig with the accompanying power of attorney signed by him for transfer in blank. As further security, Hannevig gave Hanssen nine promissory notes signed by the Pusey & Jones Company, amounting in all to the sum of $650,000, of which eight, aggregating $350,000 were payable to Christoffer Hannevig, Inc., and by it endorsed in blank; and the ninth, for $300,000, was payable to Christoffer Hannevig and by him endorsed in blank. All these notes were overdue but

each had been extended by endorsement in accordance with a letter to the United States Shipping Board Emergency Fleet Corporation,— which had made heavy advances to the Pusey & Jones Company,— providing that the notes should not be payable until the completion of certain ships. The ships were finished in 1919. It further appears (but not by endorsement) that there was an agreement between the Pusey & Jones Company, the Shipping Board, Hannevig and Christoffer Hannevig, Inc., under which the notes were not to be enforced until a mortgage of the Pusey & Jones Company held by the Shipping Board was liquidated. The mortgage remains unsatisfied.

Some time prior to this transaction, the three Delaware corporations had been consolidated into one corporation under the laws of Delaware, taking the name of the Pusey & Jones Company. Two days before the settlement with Hanssen, Hannevig as President of the Pusey & Jones Company (consolidated) sold its Gloucester plant to the Baltimore Dry Docks & Shipbuilding Company and received in part payment a check of the latter concern for $750,000 payable to the order of the Pusey & Jones Company, pledging with the purchaser large blocks of the stock of the Pusey & Jones Company as security for the return of the money in the event the Shipping Board failed to satisfy its mortgage against the plant. On the same day Hannevig endorsed the check in the name of the Pusey & Jones Company and deposited it to the credit of Christoffer Hannevig, Inc. (his own shipbrokerage concern), and thereafter used the funds in its business. No action, then or later, was taken by the Pusey & Jones Company against Hannevig for this misappropriation of its funds or to offset its liability on its notes pledged to Hanssen.

After the transaction with Hannevig, Hanssen went back to Norway, at all times retaining possession of the securities. During the succeeding year demands for payment were made upon Hannevig without avail. Finally, in April, 1921, Hanssen returned to the United States. In the meantime a dispute between the Pusey & Jones Company and the United States Shipping Board had grown out of their mutual obligations, the Shipping Board indicating a purpose to deduct $3,700,000 from its indebtedness of $7,194,000 to the Pusey & Jones Company. Also a number of suits had been brought against the Pusey & Jones Company. In one, the Baltimore Dry Docks & Shipbuilding Company had recovered a judgment against the Pusey & Jones Company for $800,125. Regarding this judgment under the circumstances as invalid and realizing there remained but four days of the term of the court at which the judgment had been rendered within which to attack its validity, Hanssen filed a bill of complaint in the District Court, describing himself as a stockholder and creditor of the Pusey & Jones Company, reciting the before mentioned transaction by which he acquired its stock and notes, alleging the Company's insolvency, and praying for the appointment of receivers with authority to take over its assets, administer its affairs and particularly to proceed by appropriate action to vacate and set aside the judgment referred to. Pursuant to the prayer of the bill, the court, on June 9, 1921, entered a decree ex parte appointing receivers. This decree was nisi in char-

acter as it ordered the Pusey & Jones Company to appear on a named day and show cause why the said receivers should not be continued during the pendency of the action.

Pending what was in effect a rule to show cause the nine Norwegian parties personal and corporate, were, on their petition, granted leave to intervene as parties complainant. During the same period an involuntary petition in bankruptcy was filed against the Pusey & Jones Company in the District Court of the United States for the Southern District of New York. On its answer admitting insolvency, the Company was adjudged a bankrupt. Later, the adjudication was attacked by the receivers appointed by the District Court of the United States for the District of Delaware, resulting in litigation not pertinent to the matter before us on this appeal except in the final result that the adjudication was annulled and the bankruptcy petition dismissed.

Following the institution of the proceeding in bankruptcy but before its termination, the rule to show cause why the receivers should not be continued came on for hearing. On the first day of August, 1921, the District Court, on an opinion handed down on July 21, 1921, made its decree of June 1, 1921, appointing receivers, absolute. 276 Fed. 296. The Pusey & Jones Company by this appeal now attacks the validity of that decree on the grounds urged before and denied by the court below.

[1] Having shown diverse citizenship of the parties, the complainant by his bill invoked the equity jurisdiction of the District Court to enforce a right conferred by a state statute. Darragh v. H. Wetter Mfg. Co., 78 Fed. 7, 14, 15, 23 C. C. A. 609; Jones v. Mutual Fidelity Co. (D. C. Del.) 123 Fed. 506; Land Title & Trust Co. v. Asphalt Co. of America (C. C. A. 3d) 127 Fed. 1, 17, 18, 62 C. C. A. 23. This statute is section 3883 of the Revised Code of Delaware of 1915. With the parts on which questions have been raised italicized by us, it reads as follows:

"Whenever a corporation *shall be insolvent, the Chancellor,* on the *application* and for the benefit of any *creditor* or *stockholder* thereof, may, at any time, *in his discretion,* appoint one or more persons to be receivers of and for such corporation, * * * the powers of such receivers to be such and continued so long as the Chancellor shall think necessary. * * *"

On its interpretation of the statute in a number of aspects, the respondent challenges the right of the complainant to bring this action and the jurisdiction of the District Court to hear it.

On the primary question of jurisdiction the respondent contends that by virtue of the Constitution of the State of Delaware the Chancellor of the State of Delaware, besides holding the Court of Chancery, "which is merely one of his functions," is vested with other powers, among them the supervisory or visitorial power of the state exercised by the Chancellor under the common law, and that, in consequence, the cited section of the Revised Code does not give the Court of Chancery jurisdiction of a bill in equity for the appointment of receivers, but confers upon the Chancellor, as distinguished from the Court of Chancery, visitorial power over corporations when "application" is made to him, the exercise of which is executive, not judicial. From this prem-

ise the respondent deduces the conclusion that the District Court of the United States for the District of Delaware, though other essentials of jurisdiction be present, is without jurisdiction to administer this provision of state law.

While admittedly in certain cases powers personal to the Chancellor are conferred upon him by statute, the error in this contention is due perhaps to pardonable confusion arising from statutes—not always carefully phrased—which define the duties and powers of the Chancellor in administering equity jurisprudence in the Court of Chancery and which, in this respect, do not confer upon him equity powers exclusive of the powers of the Court of which he is the judge. Illustrations of this may be found in the first section of the chapter on the Court of Chancery in the Revised Code of Delaware (section 3844) defining the jurisdiction of the Court of Chancery, and in the fifth section, presenting rules for the Court of Chancery, and naming powers of the Chancellor in respect thereto (section 3848), where reference to the Court of Chancery and to the Chancellor is made in the same sense and without distinction.

While the question whether the Court of Chancery of Delaware has jurisdiction by bill of complaint to appoint receivers for an insolvent corporation has not, so far as we are informed, been raised or decided in any court in the State of Delaware, the reports abundantly show that the Court of Chancery of Delaware has regularly exercised such jurisdiction on the assumption that it possessed it. Thoroughgood v. Georgetown Water Co., 9 Del. Ch. 84, 77 Atl. 720; Ellis v. Penn Beef Co., 9 Del. Ch. 213, 80 Atl. 666; Mark v. American Brick Mfg. Co., 10 Del. Ch. 58, 84 Atl. 887; Ross v. South Delaware Gas Co., 10 Del. Ch. 236, 89 Atl. 593; In re D. Ross & Son, Inc., 10 Del. Ch. 434, 95 Atl. 311; Sill v. Kentucky Coal & Timber Development Co., 11 Del. Ch. 93, 94, 97 Atl. 617; Fell v. Securities Co. of N. A., 11 Del. Ch. 101, 97 Atl. 610; Whitmer v. Whitmer & Sons, Inc., 11 Del. Ch. 185, 222, 225, 98 Atl. 940; Hopper v. Fesler Sales Co., 11 Del. Ch. 209, 99 Atl. 82. Acting on the same assumption the District Court of the United States for the District of Delaware has, in appropriate cases too numerous to mention, exercised the same jurisdiction.

This uninterrupted and unquestioned conduct of both state and federal courts for decades is a contemporaneous construction of the statute in opposition to the attack now made upon the jurisdiction of the Court of Chancery of Delaware and, similarly, upon the jurisdiction of the District Court of the United States for the District of Delaware, to entertain thereunder a bill in equity for the appointment of receivers. Until the courts of Delaware have held the contrary, we shall not close a door so long open. Darragh v. H. Wetter Mfg. Co., 78 Fed. 7, 23 C. C. A. 609.

Coming to the question of the right of the complainant to bring this action, it appears from the bill that the complainant endeavored to bring himself within the statute by averring first, that he is a stockholder, and second, that he is a creditor of the respondent corporation—persons for whose benefit the statute affords relief by receivership—and third, that the respondent corporation is insolvent. The respond-

ent, in traversing all these averments, challenges Hanssen's qualification as complainant in the first two respects, and, failing this, his right to relief in the third respect.

We shall first inquire into the qualification of the complainant as a creditor of the respondent corporation.

Hanssen's relation to the Pusey & Jones Company is that of holder by endorsement in blank after maturity of nine of that company's promissory notes. If the Pusey & Jones Company, as maker of the notes, is liable to Hanssen, the holder of the notes, then Hanssen is a "creditor" of the Pusey & Jones Company within the terms of the statute. The test of the liability of the Pusey & Jones Company on its notes in the hands of Hanssen is, first, whether Hanssen has a legal right to sue and recover on the notes; and second, whether in such an action the Pusey & Jones Company can assert against Hanssen the equities it holds against Hannevig, thereby defeating a right of action in Hanssen otherwise valid.

[2] The law on the first question, we think, is settled. It arises out of the position of the holder of negotiable paper which the law everywhere recognizes to be of an exceptional character. For this reason the law indulges in presumptions. The basic presumption is that of title to a note arising from possession, Parsons v. Utica Cement Mfg. Co., 82 Conn. 333, 73 Atl. 785, 135 Am. St. Rep. 278; or by endorsement even though in blank and after maturity without notice to the maker, Davis v. Miller, 14 Grat. (Va.) 1; Kunkel v. Spooner, 9 Md. 462, 66 Am. Dec. 332.

Possession of a note with its presumption of title enables the holder to maintain a suit on the note in his own name. Courts will not inquire whether the holder sues for himself or as trustee for another, nor into his right of possession unless on an allegation of mala fides. Kunkel v. Spooner, 9 Md. 462, 66 Am. Dec. 332. To the same effect are cases cited in 66 L. R. A. 516, note 2, and 3 R. C. L. 980, 981.

The case of Pearce v. Austin, 4 Whart. (Pa.) 489. 34 Am. Dec. 523, illustrates the rule. There a note was endorsed in blank, and, coming into the hands of Austin, agent for an unincorporated company, action was instituted by him in his own name as holder of the note. The question as stated by the Supreme Court of Pennsylvania was: "Can an agent bring a suit on a promissory note in his own name?" In answering this question the Supreme Court said:

"A holder of negotiable paper, can maintain an action on it in his own name, without showing title to it. The court will not inquire into his right to the paper, or his right to maintain a suit upon it, unless circumstances appear showing his possession to be mala fide. Dean v. Hewett, 5 Wendell, 257; Talman v. Gibson, 1 Hall, 308; Livingston v. Gibson, 3 Johns. Cases, 263. * * *

"This principle applies to a note payable to bearer, or endorsed in blank; for in either case an action can be maintained in the name of any person, without the plaintiff being required to show that he has any interest in it, unless he come into the possession of the note under suspicious circumstances. Here there is no allegation of mala fides, so that the case stands clear of that objection. A suit is brought by Austin, who is a trustee or agent for the company. He has the legal title to the bill, and the suit is brought in the name of the legal owner. Stating that he is the agent of the Union Glass Works is equivalent to saying that the suit is for their use. This brings it within the principle of the cases cited. But Mauran v. Lamb, 7 Cow. 174, is still nearer

the point. It is there held, that one holding a check or note payable to bearer, as a mere agent, may sue on it in his own name, and that it does not lie with the opposite party to assert the plaintiff's want of interest. It can certainly make, no difference whether the note is payable to bearer, or endorsed in blank, and in the possession of a bona fide holder."

Beyond the cases which hold that courts will not inquire whether the plaintiff holder of the note sues for himself or as trustee for another are cases which hold quite directly that an agent or trustee who has received a promissory note by endorsement in blank holds the title as against all parties thereto, except the principal, and may maintain an action thereon in his own name. Poorman v. D. O. Mills & Co., 35 Cal. 118, 95 Am. Dec. 90; Chase v. Burnham, 13 Vt. 447, 37 Am. Dec. 602; Illinois Conference v. Plagge, 177 Ill. 431, 53 N. E. 76, 69 Am. St. Rep. 252; Pearce v. Austin, 4 Whart. (Pa.) 489, 34 Am. Dec. 523.

On these authorities we are of opinion that the complainant has shown legal title in the notes on which he founded his right to maintain the bill for receivers, and, there being no question of mala fides in their acquisition, that he is qualified to bring and prosecute this action in his own name, although, as it appears in the record, nine other persons have interests in the notes. If there is infirmity in this conclusion it is cured by the fact that these nine interested persons have, by intervention, become parties complainant in the action.

A similar situation arose in Illinois Conference v. Plagge, 177 Ill. 431, 53 N. E. 76, 69 Am. St. Rep. 252, where the court, holding that a suit was properly brought by an agent who had received a note endorsed in blank for collection, allowed the parties beneficially interested in the note to intervene. Thus in the case at bar—though not receding from our finding that Hanssen has shown himself qualified as a creditor within the meaning of the statute to bring this action on the notes— the full title to the notes, the legal title in Hanssen and the equitable title in the nine Norwegians, is now present, and therefore will carry the case, at least, to a hearing. The diversity of citizenship of all parties, legal and equitable, is shown and the requisite amount is declared. Hence the jurisdiction of the District Court to entertain the bill of complaint is fully established.

[3] The next question is whether Hanssen's right to maintain this action on notes, otherwise valid, is lost because the notes, having been transferred after maturity, are subject to all equities between the original parties, including particularly the claim of the Pusey & Jones Company, the maker, against Hannevig and Christoffer Hannevig, Inc., the payees, for their misappropriation and use of $750,000 of the maker's money. In support of this contention the respondent relies on the rule followed in some jurisdictions, notably that of New York, extending in the latter through cases beginning with O'Callaghan v. Sawyer, 5 Johns. (N. Y.) 118, to Davidson v. Alfaro, 80 N. Y. 660.

We are of opinion that the New York rule is an exception to the general rule that an endorsee takes paper subject only to such equities or defenses as attach to the bill or note itself, and not to claims arising out of collateral matters or independent transactions, whether they arise against the payee or an intermediate holder. 3 R. C. L. 1046, and cases.

The general rule, or, perhaps, the common-law rule, followed by the Supreme Court of the United States in National Bank of Washington v. Texas, 20 Wall. 72, 22 L. Ed. 295, is stated by Mr. Justice Swayne as follows:

"The transferee of overdue negotiable paper takes it liable to all the equities to which it was subject in the hands of the payee, but those equities must attach to the paper itself, and not arise from any collateral transaction. A debt due to the maker from the payee at the time of the transfer cannot be set off in a suit by the endorsee of the payee, although it might have been enforced if the suit had been brought by the latter."

As the equity or the right of action of the Pusey & Jones Company against Hannevig, and perhaps against Christoffer Hannevig, Inc., for misappropriation and use of its money arose subsequent to the making of the notes and was in no way connected with the notes themselves, and, further, as the notes were delivered, though after maturity yet without notice of this transaction or of the agreement extending the time of enforcement, we are of opinion that the notes were not affected thereby and hence came into and remain in the hands of Hanssen, the holder, free thereof.

[4] But the respondent further contends that an action of this character may be maintained only by a judgment creditor; that the complainant, even if he be a creditor, is not within this class, and, therefore, is without right, under the statute, to maintain this action. This question was decided adversely to the respondent's contention by the District Court of the United States for the District of Delaware in Jones v. Mutual Fidelity Co. (C. C.) 123 Fed. 506. Later, the question was settled by the Court of Chancery of the State of Delaware in Sill v. Kentucky Coal & Timber Development Co., 11 Del. Ch. 93, 100, 97 Atl. 617. That was a case in which the complainant averred in the bill that he was "a creditor of the company based on a promissory note made by it, but not then due, and also a stockholder of the company." The object of the bill was the appointment of a receiver based on insolvency. The court, construing the statute here in question, held that: "It is not necessary that the complainant be a judgment creditor." See Darragh v. H. Wetter Mfg. Co., 78 Fed. 7, 14, 15, 23 C. C. A. 609.

Our judgment, therefore, is that the learned trial judge committed no error in holding Hanssen qualified as a creditor within the statute to maintain his bill of complaint to final hearing. Being of this opinion, we again concur with the learned trial judge that it does not become necessary to consider and decide his qualification as a stockholder.

The next question bearing on the complainant's right to maintain this action is the insolvency of the respondent company. That has been so frequently admitted by the company itself and so clearly established within the Delaware rule that discussion would add nothing to its certainty.

[5] Finally, the respondent charges that the court erred in failing properly to exercise discretion in the appointment of receivers. Whether the court abused its discretion—the only inquiry on this phase of the appeal—depends, first, on the subject matter to which its discretion

was addressed, and second, on the manner in which its discretion was exercised. Assuming that, on the affidavits, the complainant's charge of fraud and collusion in obtaining the judgment of the Baltimore Dry Docks & Shipbuilding Company against the Pusey & Jones Company was not sustained, there remain ample matters to which the court could validly direct its discretion. That the court did not yield to a personal whim, but based its decision on valid grounds, is shown by the discussion in its opinion. Sill v. Kentucky Coal & Timber Development Co., 11 Del. Ch. 93, 98, 99, 97 Atl. 617.

The decree below is affirmed.