## DARRAGH v. H. WETTER MANUF"G CO. et al.

### (Circuit Court of Appeals, Eighth Circuit. January 18, 1897.)

### No. 766.

1. FEDERAL COURTS—ENFORCEMENT OF RIGHTS CREATED BY STATE STATUTES.

Rights created or provided by the statutes of the states to be pursued in the state courts may be enforced and administered in the national courts either at law, in equity, or in admiralty, as the nature of the rights or remedies may require.

2. SAME—EQUITABLE RIGHTS.

An enlargement of equitable rights by the statutes of the states may be administered by the federal courts as well as by the courts of the states.

3. SAME.

"A party by going into a national court does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality. The wise policy of the constitution gives him a choice of tribunals." Davis v. Gray, 16 Wall. 203, 221.

4. SAME—CREDITORS' BILL—STATE STATUTES.

A contract creditor, who has not reduced his claim to judgment, may maintain a bill in equity in the federal court, under the statutes of the state of Arkansas (sections 1425–1428, Sand. & H. Dig.), for the appointment of a receiver and the sale of the property of an insolvent corporation of that state, and for the distribution of its assets among its creditors.

5. INSOLVENT CORPORATIONS—RECEIVERS—RIGHTS OF STOCKHOLDERS.

A stockholder of an insolvent corporation, whose stock is worthless, and cannot be made of any value by the granting of the relief prayed in his bill, cannot maintain a suit to set aside an order appointing the receiver and a decree directing a sale of the property of the corporation, on the ground that its officers and directors fraudulently colluded with the complainant in the proceeding, to enable it to obtain the order and decree.

6. EQUITABLE RELIEF—PARTIES ENTITLED.

Courts of equity do not attempt to right wrongs at the suit of those who have not suffered from them, or to grant decrees that can give their suitors no relief.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Eastern District of Arkansas.

This is an appeal from a decree dismissing a bill in equity filed in the court below by the appellant, Thomas J. Darragh, against the H. Wetter Manufacturing Company, the Dickinson Hardware Company, and the W. W. Dickinson Hardware Company, three corporations, to set aside an order appointing a receiver of the property of the Dickinson Hardware Company, and a decree for its sale, made by the court below in a suit between the H. Wetter Manufacturing Company and the Dickinson Hardware Company. The bill alleged the existence of these facts: The Dickinson Hardware Company was a corporation engaged in the mercantile business at Little Rock, in the state of Arkansas, in the month of November, 1895. Its business had been affected by the general depression, but it had at all times met its maturing obligations, and none of its commercial paper had gone to protest. Its capital stock was $100,000, $68,500 of which had been subscribed and paid for. Of this the appellant owned $29,000, W. W. Dickinson $29,000, J. H. Martin $8,000, and G. H. Lyon $2,500. The directors of the corporation were W. W. Dickinson, J. H. Martin, and G. H. Lyon, and Dickinson was its president and Lyon its secretary. These directors formed a conspiracy to wreck the cor-

poration, to defraud its creditors and stockholders, and to obtain its property for themselves. Thereupon they induced the H. Wetter Manufacturing Company to file in the court below a bill in these words:

"United States Circuit Court, Eastern District of Arkansas, Western Division.

"H. Wetter Mfg. Co. vs. Dickinson Hardware Co.

"Original Bill.

"To the Judges of Said Court, in Chancery Sitting: Your orator states that it is a corporation created and doing business under the laws of the state of Tennessee, while the defendant is a corporation created and doing business under the laws of the state of Arkansas, and an inhabitant of this district. Said defendant is indebted to your orator, for goods sold and delivered, in the sum of twenty-eight hundred forty-two and 90-100 dollars, and is insolvent, but that the distributive share going to your orator upon a distribution of its assets will exceed the sum of two thousand dollars. Your orator therefore prays for process of subpœna against the defendant; that it be required to answer this bill; that a receiver be appointed to take possession of its assets, and to administer the same; that they be reduced to money and distributed among the creditors entitled thereto; and for all other proper relief.                                                      Rose, Hemingway and Rose."

The debt of $2,842.90 mentioned in this bill was a simple debt upon contract, and no part of it had ever been reduced to judgment. $1,880.30 of it was not due, and $1,110 was for goods that were never received or accepted, but were returned, by the Dickinson Hardware Company. The bill was filed on November 1, 1895. At the time of its filing the H. Wetter Manufacturing Company made a motion for the appointment of a receiver of the property of the Dickinson Hardware Company, and W. W. Dickinson, its president, appeared in court, without the issue of a subpœna, and consented to the appointment of his brother-in-law as the receiver. The court at the same time made the appointment, and made an order that all creditors of the Dickinson Hardware Company should present their claims to the court or to the receiver within 90 days. On December 20, 1895, a meeting of the St. Louis creditors of the Dickinson Hardware Company was held, and that meeting appointed a committee of three to investigate and report the financial condition of the corporation. They went to Little Rock, and examined its assets. The inventory of the receiver, which had been filed, disclosed the fact that the face value of those assets was $244,230.93, and that the liabilities of the corporation were $153,949.08; but the committee reported on December 31, 1895, that the actual value of these assets was only $117,278.42, and recommended that a proposition to pay the creditors 40 per cent. of their claims in full settlement thereof, which had been made by the corporation through Dickinson, its president, be accepted. The report of this committee does not fairly show the value of the assets of the corporation, which was in reality $175,917.42. The directors of the Dickinson Hardware Company were indebted to that corporation in the following amounts, viz.: W. W. Dickinson, in the sum of $19,070.93; J. H. Martin, in the sum of $3,272.28; and G. H. Lyon, in the sum of $2,338.18. The appellant was at Hot Springs, Ark., when the receiver for this company was appointed, and had no notice of such action or contemplated action; but immediately after a conference between W. W. Dickinson and the creditors in St. Louis, at which the offer of settlement was submitted, Dickinson notified him that, unless he would consent to the forgiveness of the debts of the directors to the corporation, he (Dickinson) would proceed no further with the compromise. The appellant refused to consent to this, and Dickinson then notified him to look out for his own interest. Thereupon, on January 21, 1896, Dickinson, pursuant to a resolution of the board of directors of the corporation, appeared in the court below, and consented, on behalf of the Dickinson Hardware Company, to a final decree in the suit of the H. Wetter Manufacturing Company against it, which was then rendered. This decree recited that some of the merchandise shown by the inventory of the receiver had been converted into money, and that some of it had been delivered upon orders by the court to intervening claimants, and directed that all the property of the corporation be sold in bulk by the master, after four weeks' published notice, and that the money in the hands of the receiver should pass to the purchaser with the other property. It provided for the distribution of the proceeds of the sale among the creditors, share and share alike. The directors of the

Dickinson Hardware Company, together with Fannie R. Dickinson, the wife of W. W. Dickinson, and John W. Dickinson, his brother, then organized a new corporation under the laws of the state of Arkansas, styled the W. W. Dickinson Hardware Company. The shares of the stock in it were $25 each. W. W. Dickinson, J. H. Martin, G. H. Lyon, and John W. Dickinson each took one share, and Fannie R. Dickinson 285 shares. Instead of proceeding further with the compromise of the claims of the old corporation, W. W. Dickinson obtained assignments of the claims against it to this new corporation for 40 per cent, of their face value, one-half of which was to be paid in cash, and the other half in secured notes, maturing in 6 and 12 months. He had these assignments deposited with an agent in Little Rock, to be delivered to this new corporation whenever the cash and the notes should be paid over for them. When the bill of the appellant was filed, he had thus procured the deposit with this agent of assignments of claims to the amount of more than $100,000, ready to be delivered to the new corporation whenever the payments should be made. Meanwhile, W. W. Dickinson, J. H. Martin, and G. H. Lyon were in the employment of the receiver, and perfectly familiar with the amount and value of the assets of the old corporation. The sale was advertised, and was about to take place. Dickinson, to prevent competition at the sale, and with the intent to purchase the property for his new corporation, represented to inquirers that nearly all the debts owing to the old corporation that could be collected had been paid, and at the same time he was writing to the debtors not to pay until after the sale. There was $20,000 cash in the hands of the receiver that would go to the purchaser. Dickinson, who was the general manager of the receiver, and his other employés gave evasive and unwilling answers to those who inquired as to the amount and value of the property to be sold, and no one but these employés could ascertain its quantity and value. The decree and all these proceedings under it were designedly made and taken to prevent competition at the sale, to conceal the value of the property, and to enable Dickinson's new corporation to buy it at a price far below its actual value. The appellant had demanded that the directors of the Dickinson Hardware Company should apply to the court to have the decree of sale and the order appointing the receiver set aside, and had demanded that they should make a proper defense to the claim of the H. Wetter Manufacturing Company, and they had refused to comply with this request. Thereupon, on February 28, 1896, the appellant filed this bill, in which he set forth, much more at length and in detail than we have done, the facts we have recited, and prayed the court below to set aside the decree for the sale of the property of the Dickinson Hardware Company and the order appointing a receiver thereof, to permit him to answer and defend against the claim of the H. Wetter Manufacturing Company, and ultimately to dismiss its bill and to direct the receiver, after the allowance and payment of his just charges, to turn the property back to the Dickinson Hardware Company. The court below entered a decree dismissing this bill, and the appeal challenges that decree.

John McClure, for appellant.

W. E. Hemingway (U. M. Rose and G. B. Rose with him on the brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

SANBORN, Circuit Judge, after stating the facts as above, delivered the opinion of the court.

A motion to dismiss this appeal has been made by the appellees on the ground that under the order appointing the receiver, and under the decree directing the sale of the property of the Dickinson Hardware Company, which the appellant attacks in his bill, he has accepted substantial benefits, and is thereby estopped from challenging them. The motion is founded on this state of facts: The appellant, before the receiver was appointed, held the note of the Dickinson Hardware Company, secured by certain collateral notes which he had placed in the hands of G. H. Lyon, one of the employés

of that corporation, for collection. When the receiver was appointed, on November 2, 1895, he wrongfully took possession of these collateral notes, as a part of the property of the hardware company, and collected some of them. After the decree for the sale of the property of that corporation had been made, and on February 8, 1896, the appellant filed a petition in that suit, in which he set forth these facts, and prayed for the possession of the collateral notes that were not collected, for the payment to him of the amount collected from them by the receiver, and for the payment of his claim, pro rata with the other creditors, out of the amount realized from the other assets of the corporation. An answer was made to this petition, which denied that the debt of the corporation was more than $1,026.19, and averred that the appellant was not entitled to recover anything upon his claim, because his note and the assignment of the collaterals were usurious. After the property of the hardware company had been sold under the decree, and after the master had received the proceeds of the sale, and on April 18, 1896, a hearing was had upon this petition of the appellant, and the court found that the hardware company was indebted to him in the sum of $927.-02, that the receiver had collected from the collaterals pledged for the payment of his debt more than this amount, and ordered the master to pay him the $927.02 out of the moneys in his hands. The appellant accepted the payment, and it is upon this fact that the appellees base their motion for the dismissal of this appeal.

It is sometimes the case that one who accepts benefits conferred upon him by a decree, which he could not have secured without the decree, cannot be subsequently heard to challenge it. He may not select and accept the advantageous terms of a decree, and reject and successfully attack those that cast a burden upon him. Albright v. Oyster, 19 U. S. App. 651, 9 C. C. A. 173, and 60 Fed. 644. But it is difficult to find anything of this character in the action of the appellant in this case. He neither sought nor obtained any benefit from the order appointing the receiver, or from the decree of sale which he seeks to attack in his bill. He was wrongfully deprived of the possession and benefit of his collaterals under this order and decree, and he appealed to the court whose action had unwittingly inflicted the injury upon him to right this wrong. The court properly granted his prayer, and, as far as possible, restored him to the situation in which he was before he was wronged. In all this, the appellant neither expressly nor impliedly admitted that the order and decree under which his property had been taken were either right or wrong, and he accepted no benefit from them that he would not have had if they had never been made. If they had not been made, his collaterals would never have been taken from him. His position in his intervention was that the court, through its receiver, had wrongfully taken property from him that was pledged to secure him as a creditor. His position now is that it has wrongfully taken and disposed of other property, in which he had an interest as a stockholder. The two contentions are perfectly consistent, and the acceptance of the benefits of the successful maintenance of the one in no way estops the appellant from sustaining the other. Embry

v. Palmer, 107 U. S. 3, 2 Sup. Ct. 25; Gilfillan v. McKee, 159 U. S. 303, 311, 16 Sup. Ct. 6. The motion to dismiss the appeal is denied.

Upon the merits, these two questions are presented for consideration: Had the circuit court of the United States, sitting in Arkansas, jurisdiction to appoint a receiver and enter a decree of sale of the property of an insolvent corporation of that state, at the suit of a creditor who had not reduced his claim to judgment pursuant to the provisions of the statutes of the state of Arkansas? If so, do the facts stated in the bill of the appellant warrant the granting of any relief to him? The statutes of the state of Arkansas under which the bill for the seizure and sale of the property of the Dickinson Hardware Company, for the distribution of its proceeds among its creditors, and for other relief, was filed, are as follows:

"Sec. 1425. No preferences shall be allowed among the creditors of insolvent corporations, except for the wages and salaries of laborers and employees.

"Sec. 1426. Any creditor or stockholder of any insolvent corporation may institute proceedings in the chancery court for the winding up of the affairs of such corporations, and upon such application the court shall take charge of all the assets of such corporation and distribute them equally among the creditors after paying the wages and salaries due laborers and employees.

"Sec. 1427. Every preference obtained or sought to be obtained by any creditor of such corporation, whether by attachments, confession of judgment, or otherwise, and every preference sought to be given by such corporation to any of its creditors, in contemplation of insolvency, shall be set aside by the chancery court, and such creditor shall be required to relinquish his preference and accept his pro rata share in the distribution of the assets of such corporation; provided, no such preference shall be set aside, unless complaint thereof be made within ninety days after the same is given or sought to be obtained." Sand. & H. Dig.

In the statement which precedes this opinion, we have set forth the entire bill upon which the proceeding under this statute was founded. It is a model of clearness and brevity, worthy of imitation. It states, without a useless word, the facts conferring jurisdiction upon the federal court, and the existence of every condition required by the statute of Arkansas to entitle the complainant to the relief it prays. If it had been filed in the chancery court of that state, a glance at the statute and the bill would have satisfied any court of its sufficiency. But the appellant contends that it cannot be maintained in a national court, because it does not allege that the claim of the complainant had been reduced to judgment, and that an execution upon it had been returned nulla bona. In support of this position, he cites Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276; Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977; Hollins v. Iron Co., 150 U. S. 371, 14 Sup. Ct. 127; Atlanta & F. R. Co. v. Western Ry. Co. of Alabama, 1 C. C. A. 676, 50 Fed. 790; Morrow Shoe Manuf'g Co. v. New England Shoe Co., 6 C. C. A. 508, 57 Fed. 685. These decisions are based upon the equity rule embodied in sec-

tion 723 of the Revised Statutes, which provides that "suits in equity shall not be sustained in either of the courts of the United States in any case where a plain, adequate, and complete remedy may be had at law." Thus, in Whitehead v. Shattuck the court held that a suit in equity against a defendant in possession of real estate, to quiet the title to and recover the possession of it, under a state statute, could not be maintained, because the remedy by ejectment was plain and adequate. In Scott v. Neely and Cates v. Allen the supreme court held, for the same reason, that, under state statutes which authorized creditors to maintain such suits in the state courts without reducing their claims to judgments, a creditors' bill could not be maintained in the national courts to set aside fraudulent conveyances and subject the property conveyed to the payment of the debt of the complainant. It is worthy of note, however, that Mr. Justice Brown and Mr. Justice Jackson dissented from the opinion and decision of the majority in the latter case, and Mr. Justice Brown delivered a vigorous dissenting opinion, in which he expressed the same views and cited the same authorities which he subsequently presented in the unanimous opinion of the supreme court in the later case of Cowley v. Railroad Co., 159 U. S. 569, 583, 16 Sup. Ct. 127. In Hollins v. Iron Co., 150 U. S. 371, 14 , ap. Ct. 127, the supreme court held that a simple-contract creditor could not maintain a bill in equity in the national courts to set aside a fraudulent mortgage, or to have the property of a corporation seized, sold, and its proceeds distributed among its creditors, and that, in order to maintain such a suit, he must first reduce his claim to judgment. In that case there was no state statute authorizing such a proceeding in the courts of the state, and all that is said in the opinion as to the effect of such a statute is obiter dicta. Mr. Justice Brown and Mr. Justice Jackson again dissented. If these cases can still be said to state the rule of law upon the question under consideration, in view of the authorities to which we are about to refer, they may perhaps be distinguished from some of them by the fact that the provisions of the state statutes which they ignore neither created a new right nor provided a new remedy, but simply changed the rules of practice in equity which governed the enforcement of rights in the state courts, which were well established when the judicial system of the federal government was adopted. The right to maintain a bill in equity to quiet the title to land existed before the national government was established, but the practice required that the complainant should be in possession, and that his title should have been established at law. The statute considered in Whitehead v. Shattuck dispensed with these prerequisites in the state courts, and thus modified the equity practice in the enforcement of a recognized right. In the same way the statutes considered in Scott v. Neely and Cates v. Allen dispensed with the rule of practice in equity, so far as the state courts were concerned, which required a creditor to reduce his claim to judgment, and obtain the return of an execution unsatisfied, before he could enforce the established right, which he had had long anterior to the foundation of this government, to maintain a bill in equity to set aside a fraudu-

lent conveyance. The decisions in these cases go no further, in any event, than to hold that these particular state statutes did not dispense with these rules of practice in equity in the national courts. On the other hand, in Ex parte McNiel, 13 Wall. 236, the supreme court sustained a libel in the federal court to recover half pilotage, which was given by a statute of the state of New York, and said:

"This principle may be laid down as axiomatic in our national jurisprudence: A party forfeits nothing by going into a federal tribunal."

In Davis v. Gray, 16 Wall. 203, 221, that court said:

"A party, by going into a national court, does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality. The wise policy of the constitution gives him a choice of tribunals."

And in the case of Broderick's Will, 21 Wall. 503, 520, it declared that:

"Whilst it is true that alterations in the jurisdiction of the state courts cannot affect the equitable jurisdiction of the circuit courts of the United States, so long as the equitable rights themselves remain, yet an enlargement of equitable rights may be administered by the circuit courts as well as by the courts of the state."

In Clark v. Smith, 13 Pet. 195, 202, a suit in equity in the federal court, under a state statute, was maintained by a party in possession of real estate to cancel a junior patent, although this statute dispensed with the rule in equity that the title of the complainant must first be established at law. In Holland v. Challen, 110 U. S. 15, 25, 3 Sup. Ct. 495, a bill to quiet title to land in Nebraska, brought in the federal court by a complainant out of possession, was maintained under a statute of that state, although that statute dispensed with the equity rule that one must have established his title at law, and must be in possession, in order to maintain such a suit. In Cummings v. Bank, 101 U. S. 153, 157, the statute of a state had given to property holders the right to enjoin the payment of an illegal tax; and, in discussing the right of the complainant to maintain a suit in the national courts for that purpose, Mr. Justice Miller said:

"We have also held that, where a statute of a state created a new right or provided a new remedy, the federal courts will enforce that right either on the common law or equity side of its docket, as the nature of the new right or new remedy requires."

In Gormley v. Clark, 134 U. S. 338, 348, 10 Sup. Ct. 554, the supreme court sustained a suit in equity brought in the federal court under chapter 116, Rev. St. Ill., commonly called the "Burnt Records Act," by one out of possession of real estate, to establish his title, and to recover the possession of the property of the defendant, and granted the relief he sought, notwithstanding the earlier decision in Whitehead v. Shattuck. In this case the supreme court again declared that:

"An enlargement of equitable rights by state statute may be administered by the circuit courts of the United States as well as by the courts of the state, and when the case is one of a remedial proceeding, essentially of an equitable character, there can be no objection to the exercise of the jurisdiction."

Finally, in Cowley v. Railroad Co., 159 U. S. 569, 582, 16 Sup. Ct. 127, a case is reported in which a suit had been brought in one of

the courts of Washington territory to set aside a judgment of that court, for fraud, under a territorial statute which authorized the territorial court to vacate its judgments in original suits of this character brought for that purpose. The suit was transferred to the federal court, and there tried, but the circuit court dismissed the bill on the ground that it was not according to equity practice to vacate or act directly upon a judgment at law, that the complainant should have applied by petition or motion to set aside the judgment in the original cause, and that his remedy at law was plain and adequate. The supreme court reversed that decree. Mr. Justice Brown delivered the unanimous opinion of the court, in which he announces the same rules and cites the same authorities which he had so vigorously presented in his dissenting opinion in Cates v. Allen, 149 U. S. 451, 461, 13 Sup. Ct. 883, 977. In speaking of this suit, he said:

"Even if it were treated as in form a bill in equity, the right of the complainant would be gauged as well by the statute under which the bill was filed as by the general rules of equity jurisprudence. * * * While the federal court may be compelled to deal with the case according to the forms and modes of proceeding of a court of equity, it remains, in substance, a proceeding under the statute, with the original rights of the parties unchanged."

Upon a careful review of all these authorities, and especially in view of the decisions in the last two cases to which we have adverted, it may, we think, be safely said that the following rules relative to the jurisdiction and power of the federal courts to enforce rights created, and to administer remedies provided, by state statutes for enforcement and administration in the courts of the states, have been firmly established in the jurisprudence of the United States: Rights, created or provided by the statutes of the states to be pursued in the state courts may be enforced and administered in the federal courts, either at law, in equity, or in admiralty, as the nature of the new rights may require. Ex parte McNiel, 13 Wall. 236; Cummings v. Bank, 101 U. S. 153, 157; Trust Co. v. Krumseig (decided by this court at May term, 1896) 77 Fed. 32. An enlargement of equitable rights by the statutes of the states may be administered by the national courts as well as by the courts of the states. Case of Broderick's Will, 21 Wall. 503, 520; Clark v. Smith, 13 Pet. 195, 202; Holland v. Challen, 110 U. S. 15, 25, 3 Sup. Ct. 495; Frost v. Spitley, 121 U. S. 552, 557, 7 Sup. Ct. 1129; Reynolds v. Bank, 112 U. S. 405, 5 Sup. Ct. 213; Chapman v. Brewer, 114 U. S. 158, 170, 171, 5 Sup. Ct. 799; Gormley v. Clark, 134 U. S. 338, 348, 349, 10 Sup. Ct. 554; Bardon v. Improvement Co., 157 U. S. 327, 330, 15 Sup. Ct. 650; Cowley v. Railroad Co., 159 U. S. 569, 583, 16 Sup. Ct. 127. "A party, by going into a national court, does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality." Ex parte McNiel, 13 Wall. 236; Davis v. Gray, 16 Wall. 203, 221; Cowley v. Railroad Co., 159 U. S. 569, 583, 16 Sup. Ct. 127.

Tested by these rules, the jurisdiction and power of the circuit court of the United States to seize and sell the property of this insolvent corporation, at the suit of a simple-contract creditor, under

the statutes of the state of Arkansas, is not doubtful.    Creditors and stockholders had no right, without such a statute, to have a receiver of a corporation appointed, to have its property sold, and to have its proceeds distributed pro rata among its creditors, simply because it was insolvent.    The statute created that right.    But that was not all.    It deprived every creditor of the right to collect his debt of an insolvent corporation by an action at law, an attachment, or a judgment.    It made every lien he obtained according to the course of the common law void, if it was attacked within 90 days after it was "sought to be obtained."    If a creditor of another state could not proceed to wind up an insolvent corporation in the state of Arkansas without a judgment and an execution returned unsatisfied, under this statute, a stockholder of such a corporation certainly could, and the effect of such a holding would be to give a stockholder of an insolvent corporation a right to the sequestration of its assets superior to that of a creditor.    Moreover, if a creditor were first required to obtain a judgment and a return of an execution nulla bona before he could proceed under this statute in the federal court, he would, in effect, be deprived of the right to proceed at all.    His execution could generally be levied upon sufficient property of the insolvent corporation to satisfy his debt, so that he could not obtain a return nulla bona, and therefore could not proceed in equity.    Yet his judgment and execution would be futile, because some other creditor or some stockholder would certainly proceed under the statute to vacate his judgment, and thus he would be deprived of all remedy against an insolvent corporation in the national courts, either at law or in equity.    We should hesitate long before holding that the statute of Arkansas had such an effect.    The result is that the bill of the H. Wetter Manufacturing Company was sufficient to invoke the jurisdiction of the federal court, and to authorize it to grant the relief there prayed.    It must be sustained (1) because the complainant in it had no plain, adequate, and complete remedy at law against the insolvent corporation, in the face of the state statute which declared any judgment against such a corporation void if attacked within 90 days after it was sought to be obtained; (2) because the state statute created a new right, properly enforceable in equity; and (3) because its bill was sufficient in the state court, and it lost no right or remedy by its choice of the federal court for its forum.

A single question remains:    Does the bill of the appellant state facts sufficient to entitle him to a vacation of the decree for the sale of the property of the Dickinson Hardware Company, for the discharge of the receiver, and for the ultimate return of its property to that corporation?    He is not a creditor of the corporation.    He is a stockholder.    Conceding that the acts of the president and directors of the corporation were intended to and did wreck the business of the company and defraud its creditors, so that they received but 40 per cent. of their claims, when they should have received much more, how is the appellant injured thereby?    It is not alleged that he incurred any personal liability by his ownership of his stock. Was his stock in any way depreciated in value by the acts of the ap-

pellees? It is difficult to read the bill of the appellant without reaching a settled conviction that the hardware company was really insolvent and unable to continue its business when the receiver was appointed. It is true that this bill contains allegations that none of the commercial paper of the corporation had gone to protest, that it had at all times met its maturing obligations, and that its assets were really worth $175,917.42, while its liabilities were but $153,-949.08. But we cannot close our eyes to the facts that the bill admits that the business of the corporation had been, to some extent, injured by the general depression which affected the whole country from the year 1893 down to the date of the appointment of the receiver; that it shows that the shrewd and intelligent creditors who examined its assets for the purpose of collecting their claims in December, 1895, reported that these assets were worth only $117,-278.42, and recommended to its creditors that they should accept 40 per cent. of their claims in preference to their distributive shares of the proceeds of the property of the corporation; and that more than $175,000 worth of merchandise, accounts, and bills receivable would surely have been required in Little Rock in November, 1895, to realize and pay $153,000 in cash. There is no allegation in this bill that the stock of the appellant was of any value when the order appointing the receiver was made, and, in view of the facts to which we have referred, we have been forced to the conclusion that it could not have been. Moreover, if the court below had granted the prayer of the bill when it was filed, and had turned the property back to the corporation, it is perfectly clear that it could not then have paid its debts, and the stock of the appellant would have been worth no more. For these reasons, we think this bill cannot be maintained. If the creditors were injured by the fraudulent acts of the appellees, they make no complaint. The appellant who seeks relief here shows by his bill that his stock was worthless when the acts of which he complains were committed, so that he could not have been injured by them. He shows that no relief that the court below could have given could possibly have made it of any value. Courts of equity cannot attempt to right wrongs at the suit of those who have not suffered from them, or to grant decrees that can give their suitors no relief. The decree below must be affirmed, with costs, and it is so ordered.