CITIZENS' BANK & TRUST CO. et al. v. UNION MINING & GOLD CO.

(Circuit Court, N. D. Georgia.   December 29, 1900.)

1. JURISDICTION OF FEDERAL COURTS—DISTRICT OF BRINGING SUIT—WAIVER OF OBJECTION.

Where the requisite diversity of citizenship exists between the parties to give a federal court jurisdiction, the objection that the suit is brought in a district where neither resides is one which may be waived, and, when it has been waived by a defendant corporation by appearing and voluntarily submitting itself to the jurisdiction of the court, it cannot be raised by a stockholder of such corporation who is subsequently permitted to intervene.

2. CREDITORS' SUIT—JURISDICTION OF EQUITY—WAIVER OF OBJECTIONS.

In a general creditors' suit against a corporation whose property is all within the district in which the suit is brought, where the defendant has answered admitting its insolvency, and that it is justly indebted to the complainants in the sums alleged in the bill, and a receiver has been appointed for its property, an intervening stockholder cannot thereafter raise the objection that the suit is not within the jurisdiction of a court of equity because the complainants are merely contract creditors, and especially where it does not appear that the intervener's stock is of any value, or could be made so by the discharge of the receiver and the dismissal of the suit.

3. CORPORATIONS—INSOLVENCY—WHAT CONSTITUTES.

A corporation which is largely indebted on claims long past due, whose only property consists of a gold mine and a plant for operating the same, which are not available for the payment of its debts in the ordinary course of business, and whose officers admit its inability to meet its obligations, must be regarded as insolvent, in such sense as to entitle its creditors to have its property sold, and the proceeds applied in payment of their claims.

Creditors' suit in equity.   On motion of an intervening stockholder of defendant for the discharge of the receiver.

C. J. Simmons, C. L. Pettigrew, and Robert P. Woodard, for complainants.

John S. Martin, for defendant.

NEWMAN, District Judge.   This is a bill filed by two corporations created by, and existing under, the laws of the state of Tennessee, and citizens of that state, against the defendant, a corporation created by, and existing under, the laws of West Virginia, and a citizen of that state.   The bill is a general creditors' bill, seeking to have the property of the defendant corporation, which consists solely and entirely of a gold mine, and plant for operating the same, in Union county, in this district, placed in the hands of a receiver, and, after proper decree, sold, and the proceeds of the sale distributed pro rata among the creditors.   The bill was filed on September 14, 1900, and on the 19th of the same month the defendant answered.   In its answer it admitted the allegation of insolvency contained in the bill, and the correctness of the complainants' debts as set out in the bill; that they were due and unpaid; and the necessity for the receivership, in order that the property might be protected and sold for the benefit of all the creditors of the corporation, and its affairs wound up.   On September 27th a receiver was appointed.   On

106 F.—7

October 24th, M. Patton, a stockholder in the defendant corporation, came into the litigation by intervening petition, which was amended November 14, 1900. By his intervention, and by argument of counsel, he raises three questions: (1) That the circuit court of this district is without jurisdiction to entertain the bill; (2) that the complainants are simple-contract creditors, and consequently the suit is not one of equitable cognizance; and (3) that the defendant is not insolvent. Other questions incident to these have come up in the argument, but the three named are the main questions involved.

As stated, the complainants are Tennessee corporations, and citizens of that state, and the defendant is a West Virginia corporation, and a citizen of that state. The district in which suit may be brought is a right that may be waived by the defendant, provided the requisite diversity of citizenship exists. Without quoting other authorities, this question is fully disposed of in Central Trust Co. v. McGeorge, 151 U. S. 129, 14 Sup. Ct. 286, 38 L. Ed. 98. In that case the complainant was a corporation of the state of New York, the defendant a corporation of the state of New Jersey, and the suit was brought in the Western district of Virginia. After deciding that the exemption from being sued out of its domicile is one that a corporation may waive, the following language, which is exceedingly pertinent to this case, is used: "It is scarcely necessary to say that, as the defendant company had submitted itself to the jurisdiction of the court, such voluntary action could not be overruled at the instance of stockholders and creditors not parties to the suit as brought, and who were permitted to become such by intervening petition." In this case the charter of the defendant company provided that its office for the transaction of its business should be in Chattanooga, Tenn. This would not change the citizenship of the corporation, and is not considered material in this connection.

The contention that this is not a suit of equitable cognizance, because the complainants are simple-contract creditors, is raised too late, even if it can be raised by an intervening stockholder at all. The defendant corporation, in its answer filed in the case, says: "Respondent admits that it is indebted to the complainants in this cause in the amount and on the claims as charged in the bill." There is no necessity for a trial by jury, where the defendant admits the correctness of the debt on which complainants are proceeding. That complainants should have a lien or a judgment with a return of nulla bona is not necessary, where there is an acknowledged debt, and the subject-matter of the suit is one of general equitable cognizance. This is a bill brought to distribute the assets of an insolvent corporation, having its whole property and assets in Georgia and in this district. It is a general creditors' bill, seeking a pro rata distribution among all the creditors of the proceeds of the sale of its property. The present hearing was on a motion by the intervener to dissolve the receivership, and on the hearing affidavits were presented showing certain facts which do not appear either in the bill or answer, and, among other things, that the debts of complainants are partly for money which went to purchase machinery now at the defendant's mine, and partly for the actual purchase money, it seems,

of such property.  One creditor intervening since the filing of the bill has a claim for services rendered as agent, acting manager, and general manager of the defendant corporation.  The receiver having been appointed, given bond, and taken charge of the property, and having cared for the same, and the defendant having acknowledged by its answer the debts and the necessity for the receivership, the intervening stockholder cannot raise this question: that the complainants are simple-contract creditors.  Reynes v. Dumont, 130 U. S. 354, 9 Sup. Ct. 486, 32 L. Ed. 934; Brown v. Iron Co., 134 U. S. 530, 10 Sup. Ct. 604, 33 L. Ed. 1021; Pollock v. Trust Co., 157 U. S. 429, 15 Sup. Ct. 673, 39 L. Ed. 759 (paragraph pertinent here, on page 554, 157 U. S., page 679, 15 Sup. Ct., and page 809, 39 L. Ed.); Raton Waterworks Co. v. Town of Raton, 174 U. S. 360, 19 Sup. Ct. 719, 43 L. Ed. 1005. In this last case it was held that the complainant's remedy was at law, and not in equity, but the court uses this significant language: "The defendant did not waive the question, but averred in its answer that the matters complained of in the bill were matters which could be tried and determined at law."  It is said, however, for the intervener, that in Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358, a different rule is announced, and according to that decision, and the decision in the case of Tompkins Co. v. Catawba Mills (C. C.) 82 Fed. 780, that, "in addition to an acknowledged debt, the complainant should have an interest in the property or a lien thereon created by contract or by some distinct legal proceeding."  Even if the rule goes as far as contended, this intervener is in no position to raise the question.  As exceedingly pertinent to this case, I quote from the case of Darragh v. Manufacturing Co., 23 C. C. A. 609, 78 Fed. 7, as follows:

"Does the bill of the appellant state facts sufficient to entitle him to a vacation of the decree for the sale of the property of the Dickinson Hardware Company, for the discharge of the receiver, and for the ultimate return of its property to that corporation?  He is not a creditor of the corporation.  He is a stockholder.  Conceding that the acts of the president and directors of the corporation were intended to and did wreck the business of the company and defraud its creditors, so that they received but 40 per cent. of their claims, when they should have received much more, how is the appellant injured thereby?  It is not alleged that he incurred any personal liability by his ownership of his stock.  Was his stock in any way depreciated in value by the acts of the appellees?  It is difficult to read the bill of the appellant without reaching a settled conviction that the hardware company was really insolvent, and unable to continue its business, when the receiver was appointed.  *  *  *  Moreover, if the court below had granted the prayer of the bill when it was filed, and had turned the property back to the corporation, it is perfectly clear that it could not then have paid its debts, and the stock of the appellant would have been worth no more.  For these reasons, we think this bill cannot be maintained.  If the creditors were injured by the fraudulent acts of the appellees, they make no complaint. The appellant, who seeks relief here, shows by his bill that his stock was worthless when the acts of which he complains were committed, so that he could not have been injured by them.  He shows that no relief that the court below could have given could possibly have made it of any value. Courts of equity cannot attempt to right wrongs at the suit of those who have not suffered from them, or to grant decrees that can give their suitors no relief."

In the case at bar it is impossible to say, under the evidence submitted and the situation of this corporation, how the intervener's

stock can be at present of any value. If it can be made valuable, it would seem to be by conserving the property by proper orders under care of an officer of the court, who can protect it for the benefit of all parties at interest. The same condition seems to exist as in the case from which the paragraph of the opinion has just been quoted. If this property was turned back to the corporation, it has no means of paying its debts, and its officers see no way to relieve it from its embarrassment, and no possible good could result to this intervener.

It is again contended by the intervener that the evidence submitted fails to show that the defendant is insolvent. The definition of "insolvency," as given in the American and English Encyclopædia of Law (volume 16 [2d Ed.] p. 636), is as follows:

"As used in the insolvency and bankruptcy laws, especially when applied to traders or persons engaged in commercial pursuits, the term 'insolvency' generally means the condition of a person who is unable to pay his debts as they become due in the ordinary course of business. According to this definition, a person may be insolvent though he has assets exceeding in value the amount of all his liabilities; and so it has been held that a partnership, as such, may be insolvent, though one or more of the individuals composing it are solvent [citing Ransom v. Wardlaw, 99 Ga. 540, 27 S. E. 158]."

It is stated as a further definition that, "in its popular and general sense, the term 'insolvency' denotes the insufficiency of the entire property and assets of an individual to pay his debts." Testing the question of the insolvency of the defendant by these definitions, by the former it is unquestionably insolvent, and by the latter it may be considered doubtful, but it is apparent that, as the defendant corporation's affairs now stand, it is wholly unable to pay its debts. Its sole assets are such as have been stated above, and are not available for meeting its obligations. While the business of a trading concern might be solvent in a fair sense, and yet it be unable, at a day's notice, to meet its obligations, still where the only property of a company is of the character stated in this case, where its debts are long past due, and its officers themselves acknowledge their utter inability to meet its obligations, and concede its insolvency, it is impossible for the court to come to any other conclusion.

It is shown by some affidavits in this case that three members of the board of directors were selected as trustees to look after and manage the corporate property. It seems that these trustees have done nothing either to rehabilitate the corporation or to close out its affairs, and all they did do, apparently, was to look after and care for the property. It is sufficient to say, as to this matter, that these trustees are setting up no claim here adverse to the receiver; and, if the fact of the appointment of these trustees could have any effect whatever on the questions now presented, it would seem to be not only not favorable to the intervener, but the contrary.

The intervener claims that complainants' debts are not just demands against the corporation. As to this he is entitled, of course, to be fully heard. The motion to discharge the receiver will be denied, the intervention of M. Patton will be retained, and counsel will be heard as to the propriety of a reference of the intervention to the master, in connection with the other pleadings in the case.