DURYEA v. AMERICAN WOODWORKING MACH. CO.

(Circuit Court, D. New Jersey. November 22, 1904.)

1. CORPORATIONS—STATE LICENSE FEE—NEW JERSEY STATUTE.

Act N. J. 1884 (P. L. 1884, p. 234, § 4), and amendments thereto, impose a yearly license fee or tax on corporations, and require the State Board of Assessors to report the amount to the Comptroller on or before the first Monday in June of each year, providing that the tax shall thereupon become due and payable. By decision of the highest court of the state it is held that such tax is one imposed arbitrarily as a condition to the continued existence of the corporation, and is valid when imposed upon a corporation after it has been decreed insolvent and a receiver appointed for its property, but before it has been legally dissolved. Act 1896 (P. L. 1896, p. 319) provides that, if any corporation "shall for two consecutive years neglect or refuse to pay the state any tax" assessed against it, the charter of such corporation shall be void, unless the Governor shall give further time for the payment, and that, if the tax of any company remains unpaid on the 1st day of July after it becomes due, it shall thenceforth bear interest. *Held*, that a corporation could not be said to have "neglected or refused" to pay the tax until July 1st following its assessment, and that the failure of a corporation and its receiver for more than two years to pay the tax assessed against the corporation in 1899 did not operate to dissolve the corporation, in any event, before July 1, 1901, and the tax assessed in the June preceding became a valid and preferred claim against the estate.

2. SAME—EFFECT OF FEDERAL RECEIVERSHIP.

The state does not lose the right to enforce such annual license fee against the property of an insolvent corporation because at the time of its assessment such property was in the hands of receivers appointed by a federal court in a suit instituted by creditors for its distribution under the general equity jurisdiction of the court, since the receivers took the property subject to such preferred debts as might thereafter and before distribution become due from the corporation to its creator, the state, under the provisions of law then existing.

In Equity. On exceptions to master's report.

Grey, McDermott & Enright, for exceptants.

Robert H. McCarter, Atty. Gen., for State of New Jersey.

LANNING, District Judge. The question raised by the exceptions to the master's report is whether the state of New Jersey is entitled to have paid to it by the receivers of the defendant company, as a preferred claim, a "license fee or franchise tax" of $3,500 imposed on the defendant company in 1901. The company was incorporated under the New Jersey corporations act on December 11, 1897, and it was adjudged to be insolvent and receivers were appointed for it by this court in this cause on September 6, 1899.

By section 4 of the New Jersey act of 1884, entitled "An act to provide for the imposition of state taxes upon certain corporations and for the collection thereof" (P. L. 1884, p. 234), it was provided that every corporation of the class to which the defendant company belonged should pay "a yearly license fee or tax" of one-tenth of 1 per centum on the amount of its capital stock. The section was amended in 1892 (P. L. 1892, p. 137); the only change, so far as the question now presented is concerned, being that the so-called tax was denominated an "annual license fee or franchise tax." By

a supplement to the act of 1884 approved February 19, 1901, which went into immediate effect (P. L. 1901, p. 31), the imposition is again denominated an "annual license fee or franchise tax." By section 6 of the act of 1884 it is provided that "such tax shall also be a preferred debt in case of insolvency."

In considering the validity of an imposition of a "license fee or franchise tax" upon a corporation after the Court of Chancery of New Jersey has decreed it to be insolvent and appointed a receiver for it, the highest court of New Jersey, in the United States Car Company's Case, 60 N. J. Eq. 514, 43 Atl. 673, said:

"Although the statute designates an imposition of this kind as a license fee or franchise tax, it plainly is not a tax upon corporate franchises. In fact, it is not, strictly speaking, a tax at all, nor has it the elements of one. It is in reality an arbitrary imposition laid upon the corporation, without regard to the value of its property or of its franchises, and without regard to whether it exercises the latter or not, solely as a condition of its continued existence. The state, in creating a corporation, has the right to impose upon its creature such conditions as the Legislature, within constitutional limits, may deem proper; and the acceptance by the corporation of the franchises, powers, and privileges conferred upon it binds it to the performance of those conditions so long as it continues to remain in possession of those franchises, powers, and privileges, and the conditions themselves remain unrevoked by the Legislature. And this is so without regard to the solvency or insolvency of the corporation, the value or want of value of its franchises, or whether or not it is exercising them either by its officers and directors, or through a receiver. The sole test in determining its liability to comply with those conditions, so long as they remain unrevoked, is the existence or nonexistence of the corporation."

It was accordingly held that the tax imposed on the United States Car Company after it had been decreed to be insolvent and after a receiver had been appointed, but before the company had been legally dissolved, was a valid claim against the assets in the hands of the receiver, and entitled to priority of payment over the claims of general creditors.

In the case at bar, however, the counsel for the receivers insist that the defendant company has been legally dissolved before the tax of 1901 was imposed. That insistment is based on a certain portion of section 1 of the act of 1896 (P. L. 1896, p. 319), which is as follows:

"If any corporation heretofore or hereafter created shall for two consecutive years neglect or refuse to pay the state any tax which has been or shall be assessed against it under any law of this state and made payable into the state treasury, the charter of such corporation shall be void, and all powers conferred by law upon such corporation are hereby declared inoperative and void, unless the Governor shall, for good cause shown to him, give further time for the payment of such taxes, in which case a certificate thereof shall be filed by the Governor in the office of the Comptroller, stating the reasons therefor."

The tax of 1899 was never paid by the defendant company, but was paid by the receivers after February 11, 1903, more than three years after it became due and payable. The argument is that the defendant company became dissolved by operation of law at the expiration of two years after the tax of 1899 became due and payable. The fifth section of the act of 1884, as amended in 1892 (P.

L. 1892, p. 140), required the State Board of Assessors to report to the State Comptroller, on or before the first Monday of June in each year, the amount of tax assessed against each corporation for such year, and declares that "such tax shall thereupon become due and payable." It follows that the tax imposed on the defendant company in 1899 became due and payable not later than the first Monday of June in that year, which was June 5th. The tax imposed in 1901 became due and payable not later than the first Monday of June in that year, which was June 3d. There is no proof that the State Board of Assessors reported to the State Comptroller the tax assessed upon the defendant company, in either of the two years mentioned, before the first Monday of June. It must be assumed, therefore, that the tax for each of those years became due and payable on the first Monday of June, and not earlier. If the "two consecutive years" within which the tax for 1899 should have been paid are to be understood as two calendar years, the tax for 1901 was imposed, and became due and payable, two days before the expiration of the limited period. On such construction of the act, it is clear that the defendant company could not have been dissolved by mere operation of law before the tax for 1901 was imposed and became due and payable.

But section 1 of the act of 1896 (P. L. 1896, p. 319) also provides that "if the tax of any company remains unpaid on the first day of July, after the same becomes due, the same shall thenceforth bear interest at the rate of one per centum for each month until paid." As no penalty is imposed for the nonpayment of the tax before the 1st day of July, and as the provision of the law is that the charter of a corporation shall be void only in case the corporation "shall for two consecutive years neglect or refuse to pay" the tax, failure to pay before the 1st day of July can neither be considered as neglect, nor as refusal to pay. The two-year period should begin to run on the 1st day of July next ensuing the date when the tax becomes due and payable. By this construction, which seems to me the more reasonable one, the defendant company could not have become dissolved by mere operation of law before July 1, 1901. As the tax for that year was required to be assessed, and became due and payable, not later than the first Monday in June, it was assessed and became due and payable while the company was in being.

This conclusion makes it unnecessary to consider the question discussed by counsel, whether a corporation becomes dissolved by operation of law immediately upon the expiration of two years after the tax for any particular year becomes due and payable, and before the Governor, under section 2 of the act of 1896, issues his proclamation declaring the charter of the company to be repealed.

The first objection to the tax is therefore not sustained.

The second objection to enforcing the payment of the tax by the receivers is that they hold the property of the insolvent corporation in trust exclusively for those who were its creditors when insolvency was adjudged. The adjudication of insolvency was made, and the receivers were appointed, nearly two years before the tax now

sought to be collected was imposed. The counsel for the receivers insist that this tax is not recoverable from the receivers for the reason that their powers are not derived from the statute of New Jersey concerning the appointment of receivers of insolvent corporations, but from the trust-fund doctrine developed in the decisions of our federal courts—a doctrine, they say, wholly independent of statutory law, and limited to cases where the parties instituting the proceedings are judgment creditors or mortgagees or lienholders of insolvent corporations, and to cases instituted by simple-contract creditors where no objection to the jurisdiction is interposed. Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113. It is not necessary to consider the merits of this contention. It is doubtful if it is correct. Land Title & Trust Co. v. Asphalt Co., 127 Fed. 1, 20, 62 C. C. A. 23; Darragh v. H. Wetter Manufacturing Co., 78 Fed. 7, 23 C. C. A. 609; Jones v. Mutual Fidelity Co. (C. C.) 123 Fed. 506. But assuming that in the case at bar the jurisdiction exercised is the equitable jurisdiction above referred to, and wholly independent of the provisions of the New Jersey corporations act concerning the administration of the assets of insolvent corporations, the tax complained of must be paid by the receivers. When the tax, or, more properly speaking, the license fee, was imposed, the corporation was still in existence. The receivers took into their possession all the property of the corporation. The highest court of the state, in construing the statute concerning the imposition of such a fee, has declared that it may be imposed upon a corporation for each and every year intervening between the date of appointing a receiver and the date of its legal dissolution, and that it is payable as a preferred debt out of the corporation's assets. In Davis v. Gray, 16 Wall. 203, 221, 21 L. Ed. 447, it was said:

"A party by going into a national court does not lose any right or appropriate remedy of which he might have availed himself in the state courts of the same locality. The wise policy of the Constitution gives him a choice of tribunals."

Although the state of New Jersey is not a party to the record in this case, except by intervention as a preferred creditor, it has lost none of the rights it might have enforced if the assets of the defendant company had been administered in the state Court of Chancery. The receivers took the property of the defendant company subject to such liens and preferred debts as existed at the time of their appointment, and subject also to such preferred debts as might thereafter, and before distribution of the assets, become due to its creator, the state, under the provisions of law existing at the time of their appointment.

An order will be made overruling the exceptions to the master's report.